DANIEL BUCKLEY, Plaintiff, *v.* THOMAS CLARK, Defendant.

(County Court, Niagara County, July, 1897.)

1. **Barbed-wire fences — Chapter 755, Laws of 1894 — Construction by tenant.**

Where a tenant, holding under a lease which provides that the landlord " will furnish some wire and posts to repair or make fences with and the lessee is to do the work," of his own motion strings a strand of barbed wire wholly upon his own side of an existing worm rail division fence by leading the barbed wire from one to another of the joint locks or angles of the fence, he is liable under the provisions of section 1, chapter 755 of the Laws of 1894, to the adjoining owner for

the value of a horse which became entangled in the barbed wire and was injured so that it was no longer of any use to its owner.

**2. Same — Repairs made with barbed wire.**

Since the passage of the statute, barbed wire can no more be used in the repair of fences than it can be used in their construction.

**3. Liability of owner to fence — Construction by tenant.**

The statutory duty imposed upon an owner of land to build and maintain a proper division fence does not carry with it a liability against such owner for damages occasioned by the construction of an improper fence, which construction was wholly the act of the tenant.

**4. Lease — Liability of landlord for act of tenant.**

*Semble*, that the fact that a lease provides that a landlord will furnish some wire and posts for the purpose of repairing or making fences, does not make him liable for the act of the tenant in stringing a barbed wire, without the privity of the landlord, along an existing division fence, and this, notwithstanding the fact that the tenant had procured certain barbed wire for fencing purposes at the expense of the landlord.

**5. Wrongdoers — Nonjoinder.**

As a person injured by a tortious act may sue all or any of the wrongdoers, it is not a defense to one of them that another is not joined; and in any event the nonjoinder cannot be considered where the question is not raised by the answer.

**6. Barbed-wire fences — Chapter 524, Laws of 1896.**

Chapter 524 of the Laws of 1896 had not the effect of repealing chapter 755 of the Laws of 1894, and its only effect is to permit the use of barbed wire in division fences, without the consent of the adjoining owner, providing the fences are constructed in the manner prescribed by the statute of 1896.

ACTION to recover treble damages under chapter 755 of the Laws of 1894. A jury trial was waived by the parties and the case submitted upon the following agreed state of facts:

Cornelius T. Archer, Daniel Buckley and Thomas Clark, all reside in the town of Porter, county of Niagara, and state of New York. Archer and Buckley are the owners of adjoining farms in the aforesaid town, which farms are separated by a wormrail division fence, with joint locks alternating upon the farms of said

Archer and Buckley. No barb wire was originally used in the construction of said division fence. At all times mentioned in the complaint, Clark was lawfully in possession of and occupying the farm of Archer under the written lease of said farm from Archer to Clark, for a term of three years from March 1, 1894, to March 1, 1897. At the times mentioned in the complaint Archer had neglected and was neglecting to make a sufficient division fence in accordance to the regulation prescribed for the town of Porter.

Under the terms of said lease, in the month of April, 1895, Clark procured barb wire for fencing purposes at the expense of Archer, and thereafter and because of the insufficiency of that portion of the line fence above described to be maintained by said Archer, strung a single barbed wire parallel to and along and upon a part of that portion of the division fence which, by agreement between Buckley and Archer, should be maintained by Archer and which had thereafter been maintained by him. Said barbed wire was fastened to joint locks of said wormrail division fence, which joint locks stood wholly on the farm of said Archer; then from said joint locks to the next joint locks standing wholly on the farm of Archer and so on till said wire had been strung to about twelve of said joint locks, each of which stood wholly upon the farm of Archer. The wire so strung was wholly upon and over the property of Archer and at no point upon or over the property of Buckley or over an angle of said worm fence projecting from the property of Buckley to a joint lock on the farm of Archer. Clark did not obtain the written consent or any consent of Buckley to the stringing of said single barbed wire as aforesaid. Buckley at the time mentioned herein was occupying and in possession of his adjoining farm and was the owner of a gray mare worth $80, which jumped over said wormrail division fence aforesaid, in the month of September, 1895, became entangled in the aforesaid barbed wire and was cut, torn, wounded, bruised and injured in and about the body and legs by the barbs of said wire to such an extent that she became sick, sore and lame and was, now is and never will be of any use or value to Buckley or to any other person on account of the injuries so received aforesaid. Buckley brought this action against Clark for treble damages for the injuries to his horse under an act of the legislature of the state of New York, entitled " An act to regulate the use of barbed wire in the construction of division

fence," passed May 22, 1894, and being chapter 755 of the Laws of 1894.

King & Leggett, for plaintiff.

J. Boardman Scovell, for defendant.

HICKEY, J.　The facts having been agreed upon by the parties, it only remains to apply the law.　Plaintiff contends that the facts as agreed upon bring the case clearly within the provisions of chapter 755 of the Laws of 1894, while defendant maintains to the contrary and in his brief states six different grounds why the action cannot be maintained.　These grounds will be considered in the order in which they are stated.

It is first urged that the single barbed wire strung as described in the statement of facts does not constitute "barbed wire used in the construction of any division fence constructed or built after September, 1894," within the meaning of section 1 of chapter 755 of the Laws of 1894.

On this point defendant takes the position that the statute has reference only to division fences to be built or constructed *in toto* after it went into effect and has no application to the use of barbed wire in repairing division fences then existing.　He also argues that the single strand of wire used having been strung from corner to corner on his side of the fence so that it at no point crossed or approached the division line, was not, therefore, a component part of the fence.

At the time the statute in question was enacted there were within the state　division fences without number, the location of many of which may never change, and most of which, with some repairs from time to time, will last for many years to come.　As compared with the number of old division fences which will be repaired during the next quarter of a century, the number of entirely new ones which will be constructed within the same period, it is safe to say, will be very few.　In view of this fact, a construction of the statute in question which would permit the free use of barbed wire in repairing existing division fences while prohibiting its use in such division fences as should be entirely new, would be a practical nullification of its provisions.

It is true, that the language of the statute is not as clear as it might be, and a strict literal construction such as defendant con-

tends for, might require a decision in his favor. The suggestion, however, that the statute is in derogation of common-law rights and should, therefore, receive such strict construction, does not meet with favor. Just what common-law right is invaded by this statute is not clearly pointed out. If the common law gave a man the right to build a division fence of such a character as to prove a source of danger and probable injury to his neighbors' cattle, the authority so holding has not been called to my attention. The statute *requiring* the construction of proper division fences may, in some measure, be in derogation of the common law, but the statute here under consideration *prohibiting* the construction of *dangerous* division fences is not. The former statute provides a remedy for a failure to construct and maintain a proper division fence, but it does not contemplate and, therefore, provides no remedy for the construction of a dangerous division fence. There has always been a remedy, however, for injuries sustained by reason of the construction of dangerous division fences, but until the enactment of the statute now under consideration it was a common-law remedy and not a statutory one. Rehler v. Western N. Y. & P. R. R. Co., 28 N. Y. St. Repr. 311; Roney v. Aldrich, 44 Hun, 320. If the statute in question took away this remedy it could then be said to be in derogation of the common law. But instead of depriving plaintiff in this action of his common-law right, the statute simply enlarges that right by giving him treble damages. The statute is not, therefore, in derogation of the common law and the words " constructed or built " should not be strictly and literally construed. They must, I think, be held to be sufficiently broad in their meaning as to include the word " repaired," so that the statute must be interpreted as though it read " repaired, constructed or built." No other construction can give effect to the evident intention of the legislature.

There is no merit in the proposition that the single strand of wire strung from corner to corner on defendant's side of the line was not a component part of the fence. As to stock which might jump over a division fence, a wire so strung would be more dangerous than if strung on the side where the stock were grazing; for in the latter case the stock would come in contact with the wire before making the leap and by reason thereof would be quite apt to abandon the attempt, while in the former case their first knowledge of the wire would be when they came in contact with it while in the act of leaping.

It must be borne in mind that perhaps the only practical purpose which a division fence serves is to keep stock upon their owner's land. The case here under consideration serves to illustrate the proposition that the dangerous character of a fence does not necessarily add to its effectiveness as a barrier. It should not, therefore, be constructed in such a way as to prove a trap instead of a barrier. It is not going too far then to assume that the legislature in prohibiting the use of barbed wire in the construction of division fences had in view the natural propensity of certain domestic animals to leap fences and intended not only to protect them from injury while on their owner's side of the fence but also from unnecessary injury, when, acting upon that instinct which moves the brute creation, they might attempt to break over an obstruction, the purpose of which they could not understand.

Defendant's second ground, that the owner and not the tenant is liable, cannot be upheld. True, the Town Law referred to by defendant imposes upon the owner of the land the duty of building and maintaining division fences, but as has been already pointed out, there is nothing in that statute which furnishes a remedy to an injured party for the construction of a dangerous division fence either by the owner of the land or his tenant. Hence the statutory duty imposed upon the owner of the land to build and maintain a proper division fence cannot be said to carry with it a liability against such owner for damages occasioned by the construction of an improper fence by his tenant. I cannot, therefore, concur in the argument that the words " any person " as used in the statute under which this action is brought must be construed as having exclusive reference to the owner of the land. Had such been the legislative intent it would have been very easy to have so expressed it.

The third point, that under the terms of the lease the owner and not the tenant was liable, is also untenable. There is nothing in the lease which creates any relation between defendant and his landlord except the relation of landlord and tenant. Further than this there is nothing in the lease which would justify a finding that the owner contemplated the use of barbed wire by defendant in repairing the division fence in question. The lease does provide that the landlord " will furnish some wire and posts to repair or make fence with and the lessee is to do the work." If this language would warrant a finding that the division fence in question

was within the contemplation of the parties, still its meaning cannot be so extended as to include and warrant repairs such as were made and which caused the injury. No reference is made to barbed wire in the lease and the only fence contemplated therein was to be constructed with wire strung on posts and not a single strand of barbed wire strung as described in the agreed statement of facts. But even if the lease expressly provided for the stringing of a wire along the rail fence as was done by defendant, the landlord furnishing the wire and the defendant doing the work, the act of defendant in thus stringing the wire would not be the act of an agent, but would be the act of the tenant in the performance of his contract. Under such a provision, it may be that the landlord would be liable as well as the tenant, but the latter would certainly be liable.

Defendant's fourth ground, that the owner was a necessary party defendant, is without merit. The action sounds in tort, and although the owner might be jointly or jointly and severally liable with defendant, yet, in all such cases it is optional with the plaintiff to sue all or any of those who have committed the wrong. Another answer to this objection would be, that the nonjoinder was not raised by the answer.

Defendant's fifth ground, that the statute in question has been repealed by chapter 524 of the Laws of 1896, may be passed with the simple statement that the latter law simply modifies the former by permitting the use of barbed wire in division fences when constructed as therein provided, without the consent of the adjoining owner, but does not repeal or attempt to repeal the statute under consideration.

The sixth and last ground urged by defendant, that the statute in question is unconstitutional, does not impress me that way.

It follows that judgment should be entered in favor of plaintiff for the amount agreed upon in the statement of facts.

Judgment for plaintiff.